IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROSYLN DENNY and       §
BONITA WINSLOW,       §
      §
      Plaintiffs,       §
      §
v.       §       No. 3:11-CV-1094-D (BF)
      §
WINGSPAN PORTFOLIO ADVISORS,       §
LLC,       §
      §
      Defendant.       §

## MEMORANDUM ORDER

Defendant Wingspan Portfolio Advisors, LLC has filed an Expedited Motion to Compel Mental Examinations in this race and gender discrimination and retaliation case brought under Title VII of the Civil Rights Act of 1964, the Texas Commission on Human Rights Act, and 42 U.S.C. § 1981. By its motion, Defendant seeks an order pursuant to Rule 35 of the Federal Rules of Civil Procedure directing Plaintiffs Roslyn Denny and Bonita Winslow to submit to a mental examination by Lisa Clayton, M.D., a board certified forensic psychiatrist. Plaintiffs oppose Defendant's motion on grounds that it is untimely and good cause does not exist for the examinations. Plaintiff Denny further objects that her mental condition is not "in controversy" for purposes of Rule 35. The parties have fully briefed their respective positions, and the motion is ripe for determination.

Rule 35 provides that, upon motion for good cause shown:

> The court where the action is pending may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.

FED. R. CIV. P. 35(a)(1). A party must "affirmatively put into issue" her mental condition to warrant a Rule 35 examination, and, even where a party's mental condition is "in controversy," there must still be "good cause" to order the examination. *Lahr v. Fulbright & Jaworski, L.L.P*, 164 F.R.D 204, 208 (N.D. Tex. 1996) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 121 (1964)). The "in controversy" and "good cause" requirements are not met by "mere conclusory allegations of the pleadings--nor by mere relevance to the case--but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf*, 379 U.S. at 118.

A Title VII plaintiff, like Plaintiffs here, affirmatively places her mental condition "in controversy" when she alleges a permanent or ongoing mental disorder or emotional distress or claims that she has required psychiatric or psychological care as a consequence of discriminatory treatment. *Lahr,* 164 F.R.D at 209 (citing cases). By contrast, mere allegations of emotional distress associated with claims of discrimination do not suffice to place a plaintiff's mental condition "in controversy" for purposes of Rule 35. *See id.* at 210. So-called "garden variety" emotional distress damages, or allegations of generalized insult, hurt feelings, and lingering resentment for which a plaintiff seeks no diagnosis or treatment, will not warrant a Rule 35 examination. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D.Cal. 1995).

"Good cause" requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case. *Ornelas v. So. Tire Mart, LLC,* --- F.R.D. ----, No. 5:12-CV-132, 2013 WL 1395692, at *2 (S.D. Tex. Mar. 28, 2013). Factors relevant to the "good cause" determination include whether the plaintiff has retained her own experts and intends to prove her claim through expert testimony and whether the party seeking the mental

2

examination has exhausted alternative discovery procedures prior to seeking the examination. *Id.*; *Lahr v. Fulbright & Jaworski, L.L.P*, 164 F.R.D 196, 200 (N.D. Tex. 1995). The court's analysis is "intensively fact-specific," *Lahr*, 164 F.R.D. at 199, and "what may be good cause for one type of examination may not be so for another." *Schlagenhauf*, 379 U.S. at 118.

Plaintiffs initially object that Defendant's motion should be denied as untimely because Defendant failed to diligently pursue its request that they undergo mental examinations. *See* Plf. Resp. at 3-4. According to Plaintiffs, Defendant waited "until the eleventh hour" and now the examinations cannot be completed before the expiration of the discovery cutoff deadline in this case. *Id.* The Court observes that Rule 35 does not specify a deadline in which to seek an order compelling a mental examination, and the parties previously represented that they "diligently complied" with discovery deadlines in this case. *See* Agd. Mot. Protective Order (Doc. 36) at 2, ¶ 4. The parties specifically discussed the need for a mental examination and whether good cause for such existed, but could not agree. *Id.,* ¶ 5. When Plaintiffs' counsel was unable to communicate with one of her clients regarding Defendant's request, the parties jointly sought and obtained an extension of various pretrial deadlines specifically to accommodate Defendant's Rule 35 motion. *See id.* at 2-3, ¶¶ 6-8. Under these circumstances, Plaintiffs' objection to Defendant's motion as untimely is overruled.

Now turning to the merits of Defendant's motion, the Court considers whether Plaintiffs' mental conditions are "in controversy" for purposes of Rule 35. Plaintiff Winslow alleges that she has been diagnosed with major depressive disorder that was caused by "some of the things that [she] was experiencing while [she] was working [for Defendant]." Def. Mot. App. at 22, 26. She claims she received professional medical treatment for her depression and attended group therapy sessions.

3

*See id.* at 23-25.   Winslow further alleges that her condition is ongoing, that she still takes medication for stress and anxiety related to her depression, and that she has not been able to return to work because of her condition.   *See id*. at 21-22, 25.   Significantly, Winslow also concedes that her mental condition is in controversy.   *See* Plf. Resp. at 5, ¶ 11.   Thus, the Court has little difficulty concluding that Winslow's mental condition is "in controversy" for purposes of Rule 35.

Plaintiff Denny disputes that her mental condition is in controversy.   She argues that she has not claimed unusually severe emotional distress and attempts to characterize her condition as "'garden variety' mental stress that everyone experiences when bad things happen."   Plf. Resp. at 6, ¶ 12.   However, Denny describes her symptoms to include "headaches, backaches, stomach aches, sleepless nights and insomnia, depression, loss of appetite, periods of nervousness and anxiety, uncontrollable crying, and paranoia."   Def. Mot. App. at 5, Resp. to Interrog. No. 1.   Denny testified during her deposition that she also has experienced hair loss and has become "reclusive."   *Id.* at 12.   Because of Defendant's conduct, she allegedly has stopped socializing, has had to minimize her friendships, does not want to go outside, and has lost her enjoyment of life.   *Id.* at 12-13.   Denny further testified that her mental anguish is "ongoing" and that she intended to seek counseling from Dr. Neecie Moore.   *Id.* at 13; Def. Reply App. at 11.   The Court finds that these allegations of ongoing emotional distress exceed mere allegations of  "garden variety" mental anguish and are sufficient to place Denny's mental condition "in controversy" as well.   *See Ali v. Wang Laboratories, Inc.*, 162 F.R.D. 165, 168 (M.D. Fla. 1995) (plaintiff placed mental condition in controversy by alleging ongoing and serious emotional distress); *Jansen v. Packaging Corp. of Am.*, 158 F.R.D. 409, 410-11 (N.D.Ill. 1994) (same).

4

The Court further concludes that Defendant has met its burden to show that good cause exists for a Rule 35 mental examination.  In a declaration submitted in support of Defendant's motion, Dr. Clayton explains:

> The main basis of diagnosis in forensic psychiatry is a diagnostic psychiatric interview, and this method is used by forensic psychiatrists to evaluate plaintiffs who are making claims of mental anguish, emotional pain and suffering, and similar allegations of mental, psychological, or emotional harm.  The standard forensic psychiatric evaluation consists of an assessment of the plaintiff's background, including personal history and experiences, psychiatric/psychological history, medical history, as well as an examination of the plaintiff's alleged mental and/or emotional injuries claimed in the lawsuit.  The Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") test is also used in evaluating plaintiffs who are making claims of mental anguish, emotional pain and suffering, and similar allegations of mental, psychological, or emotional harm.

Def. App. at 35, ¶ 9.  This explanation demonstrates "good cause" exists because the requested mental examinations could adduce facts that are relevant to Plaintiffs' claims of mental anguish and Defendant's defenses to those claims.  *See Ornelas*, 2013 WL 1395692, at *2 ("good cause" requires showing that examination could adduce facts relevant to plaintiff's cause of action).

Plaintiffs argue that Defendant has not established good cause because the information Defendant seeks is available from other sources, including their depositions and medical records and the deposition of their treating physician which Defendant declined to take.  Plf. Resp. at 7.  Plaintiffs further argue that good cause has not been established because they have not designated an expert on mental anguish damages and do not intend to prove their claim for mental anguish damages through expert testimony.  *Id.*  None of these facts is dispositive.  A forensic psychiatric evaluation may provide information about Plaintiffs' alleged mental anguish and emotional distress

that is not available through medical records or the cross-examination of Plaintiffs' treating physician. *See Lahr*, 164 F.R.D. at 200 (ordering Rule 35 examination notwithstanding availability of plaintiff's medical records and deposition testimony). Indeed, Dr. Clayton has reviewed both Plaintiffs' depositions and various medical records and has determined that a standard forensic psychiatric evaluation is still necessary in order to fully evaluate Plaintiffs' claims of mental and emotional injuries. Def. App. at 35, ¶ 10. Plaintiffs also have had the opportunity for a mental examination by their own phsycian. Granting Defendant's request for a Rule 35 examination in this case only levels the playing field with respect to the mental conditions which Plaintiffs affirmatively placed in controversy.

Finally, Plaintiffs request that the scope of the mental examinations conducted pursuant to Rule 35 be limited to "the mental conditions and injuries sustained by Plaintiffs as a result of Defendant's unlawful discrimination and retaliation." Plf. Resp. at 8. Dr. Clayton states in her declaration that a standard forensic psychiatric evaluation, including a clinical interview and an MMPI-2 test, is necessary in order to fully evaluate Plaintiffs' claims of mental and emotional injuries. Def. App. at 35, ¶ 10. Plaintiffs do not indicate why such an evaluation is unnecessary in this case. Nor do they identify any particular part of the proposed evaluation as inappropriate or unduly burdensome. Accordingly, the Court will limit the Rule 35 examination to a standard forensic psychiatric evaluation, as described by Dr. Clayton's declaration. *Lahr*, 164 F.R.D. at 196 ("For the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations.").

## CONCLUSION

For these reasons, Defendant's Expedited Motion to Compel Mental Examinations (Doc. 38)

is **GRANTED**.  Dr. Lisa Clayton is authorized to conduct a standard forensic psychiatric evaluation

of Plaintiffs Rosyln Denny and Bonita Wilson at a time and place agreed to by the parties.

SO ORDERED, June 5, 2013.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

7